```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


SUZANNE MATHENY,               )
                               )
           Plaintiff           )
                               )
     v.                        )    Case No. 2:04 cv 414
                               )
UNITED STATES OF AMERICA,      )
                               )
           Defendant           )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, United States of America, on June 16, 2005.  For the reasons set forth below, the motion is **GRANTED**.

Background

On January 18, 2003, Suzanne Matheny and her son went sledding on a sand dune at Porter Beach, part of the Indiana Dunes National Lakeshore.  Matheny periodically had sledded on this dune over the past 30 years.  However, on this trip her sled struck a two-inch diameter galvanized pipe that was protruding from the dune.  Matheny suffered numerous fractures to her upper leg, and her son suffered minor injuries.

The accident occurred at the same location where a child had struck a pipe while sledding one year earlier.  After the first accident, a park ranger went to the site and removed pipes that were protruding from the sand.  The government acknowledges that the ranger may have removed a pipe other than the one struck by the child and that Matheny consequently may have struck the same pipe as in the prior accident.

The government traces the potential origins of the pipe to a point prior to the establishment of the Indiana Dunes National Lakeshore in 1966 or the Indiana Dunes State Park in 1923, when the beach front at this location was lined with cottages. According to the government, the pipe may be a remnant of wells or fences built with these early cottages. At the time the federal government acquired the property, these structures were gone. However, due to the shifting nature of the dunes, remnants of the area's early development, such as pipes, may be uncovered and recovered over time by the movement of the dune.

The National Lakeshore publicizes various public events that occur within the park such as guided tours, educational lectures, and demonstrations at the park's facilities. The park further publicizes beaches within the park, the Dorothy Buell Memorial Visitors' Center, the Indiana Dunes Environmental Learning Center, and numerous trails, including the Ly-Co-Ki-We trail, which was available for cross-country skiing.

Sledding, however, is prohibited within the park. Beginning in 1999, the National Lakeshore sent notices to local newspapers and radio stations to publicize its no sledding policy. Beginning in 2001, the National Lakeshore posted "no sledding" signs at the Douglas Center, West Beach, Inland Marsh, Chellberg Farm, Lakeview, Mount Baldy, and the Dorothy Buell Memorial Visitors' Center. The National Lakeshore did not install signs at the Porter Beach area, where Matheny was injured.

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); **Lawrence v. Kenosha County**, 391 F.3d 837, 841 (7th Cir. 2004); **Branham v. Snow**, 392 F.3d 896, 901 (7th Cir. 2004); **Windle v. City of Marion**, *Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); **Lawrence**, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); **Lawrence**, 391 F.3d at 841; **Hottenroth v. Village of Slinger**, 388 F.3d 1015, 1027 (7th Cir. 2004); **Palmer v. Marion County**, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. **Spiegula v. Hull**, 371 F.3d 928, 935 (7th Cir. 2004); **Hines v. British Steel Corporation**, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated

simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc*., 21 F.3d 146, 148 (7th Cir. 1994). *See also* *Miller v. Borden, Inc*., 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also, Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact

4

finder could find for the nonmoving party"); **Schuster v. Lucent Technologies, Inc**., 327 F.3d 569, 573 (7th Cir. 2003) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The Federal Tort Claims Act ("FTCA") abrogates the federal government's immunity from suit "under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. ß1346(b)(1). Because Matheny's injuries occurred in Indiana, the court must apply Indiana law to determine the National Lakeshore's liability. *See* **Spurgin-Dienst v. United States**, 359 F.3d 451, 455 n.2 (7th Cir. 2004).

The Indiana Recreational Use Statute ("IRUS") enables the government to invoke sovereign immunity in certain circumstances despite the general waiver provided by the FTCA. *See* Ind. Code ß 14-22-10-2; **Williams v. United States**, No. NA 00-2óC H/S, 2002 WL 440221, at *3 (S.D. Ind. Jan. 16, 2002); **Reed v. United States**, 604 F.Supp. 1253, 1257 (N.D. Ind. 1984). The IRUS provides:

> (d) A person who goes upon or through the premises, including caves, of another:
>
> > (1) with or without permission; and
> >
> > (2) either:
> >
> > > (A) without the payment of monetary consideration; or
> > >
> > > (B) with the payment of monetary consideration directly or indirectly on the

5

>>>>person's behalf by an agency of the state or federal government;

>>for the purpose of swimming, camping, hiking, sightseeing, *or any other purpose* . . . does not have an assurance that the premises are safe for that purpose.

> (e) The owner of the premises does not:

>> (1) assume responsibility; or

>> (2) incur liability;

>> for an injury to a person or property caused by an act or failure to act of other persons using the premises.

> (f) This section does not affect the following:

>> (1) Existing Indiana case law on the liability of owners or possessors of premises with respect to the following:

>>> (A) Business invitees in commercial establishments.

>>> (B) Invited guests.

>> (2) The attractive nuisance doctrine.

> (g) This section does not excuse the owner or occupant of premises from liability for injury to a person or property caused by a malicious or an illegal act of the owner or occupant.

> I.C. § 14-22-10-2(d)-(g) (emphasis added)

The phrase "any other purpose" includes sledding. *See* **Civils v. Stucker**, 705 N.E.2d 524, 527 (Ind. App. 1999); **Kelly v. Ladywood Apartments**, 622 N.E.2d 1044, 1048 (Ind. App. 1994).

The purpose of this statute is to "encourage landowners to open their property to the public for recreational purposes free

6

of charge." *Williams*, 2002 WL 440221, at *3.  However, because the IRUS is in derogation of the common law, it "must be strictly construed against limiting a claimant's right to bring suit." *McCormick v. The Department of Natural Resources*, 673 N.E.2d 829, 833 (Ind. App. 1996).  *See also Civils*, 705 N.E.2d at 527.

The IRUS expressly excludes from its reach any person on the premises as an "invitee," as defined by Indiana common law.  *See* I.C. ß 14-22-10-2(f)(1).  *See also Drake v. Mitchell Community Schools*, 649 N.E.2d 1027, 1030 (Ind. 1995) (construing the term "invited guest" to include business visitors, public invitees and social guests).  The Indiana Supreme court has adopted the *Restatement (Second) of Torts* definition of invitee, which states in relevant part: "A public invitee is a person who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public." *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991) (*quoting* the *Restatement (Second) of Torts* ß332).  The landowner "owes the highest duty to an invitee: a duty to exercise reasonable care for [her] protection while [she] is on the landowner's premises." *Burrell*, 569 N.E.2d at 639.

In determining whether a person is an invitee, the court must focus its inquiry on the invitation itself.  *See Burrell*, 569 N.E.2d at 642.  *See also Williams*, 2002 WL 440221, at *5; *McCormick*, 673 N.E.2d at 836.  More specifically, the court must distinguish "between activity the landowner encourages or desires and activity it merely permits." *Williams*, 2002 WL 440221, at

\*5.  Thus, if the landowner invites the public to enter for a certain purpose, "[a]ny member of the public who enters *for that purpose* is an invitee." *Williams*, 2002 WL 440221, at \*5 (*quoting* the *Restatement (Second)* at ß 330, cmt. d) (emphasis added). However, if the person utilizes the property in a manner that exceeds the invitation, that person becomes a licensee to the extent of the excess use, and IRUS blocks her suit against the government for injuries sustained in the licensed activity.  *See Williams*, 2002 WL 440221, at \*5.

Under Indiana law, "licensees have only a license to use the land and are privileged to enter or remain on the land by virtue of the permission or sufferance of the owner or occupier." *Williams*, 2002 WL 440221, at \*4; *Burrell*, 569 N.E.2d at 640; *Civils*, 705 N.E.2d at 527.  Like trespassers, licensees "enter premises for their own convenience, curiosity, or entertainment" and "take the premises as they find them." *Burrell*, 569 N.E.2d at 640.  The permission which distinguishes licensees from invitees is "conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." *Williams*, 2002 WL 440221, at \*5 (citation and quotation omitted).  By contrast, invitation "is conduct which justifies others in believing that the possessor desires them to enter the land" for the purpose for which the land is held open. *Williams*, 2002 WL 440221, at \*5 (citation and quotation omitted).  The duty owed to licensees is merely "the duty to refrain from willfully or wantonly injuring [her] or acting in a manner to increase

8

[her] peril, which includes a duty to warn [her] of any latent danger on the premises of which the landowner . . . has knowledge." *McCormick*, 673 N.E.2d at 836.

Matheny focuses on the National Lakeshore's general promotion of its facilities and activities such as campgrounds, beaches, picnic facilities, trails, and special events, as evidence that she was invited to Porter Beach to sled.  The court agrees that members of the public who attend these events or use the National Lakeshore's facilities may be characterized as invitees when engaged *in these activities*.  However, Matheny has not produced any evidence that the National Lakeshore promoted sledding beyond a designated dune, referred to as Devil's Slide, and the defendant's ongoing efforts to publicize the sledding ban direct the opposite conclusion.  Further, the absence of signage regarding sledding on Porter Beach cannot reasonably be construed as an invitation to sled, particularly in light of the uncontroverted evidence that the defendant had taken numerous steps to notify the public of the prohibition.  Finally, even if Matheny's contention that the defendant did not enforce the sledding ban is true, this tolerance is closer to permission to sled than an invitation to sled under the *Restatement (Second) of Torts*.  Because no reasonable juror could find that the defendant invited Matheny specifically to sled at Porter Beach, the court finds that Matheny was a licensee, rather than an invitee, at the time of her accident.  See *McCormick*, 637 N.E.2d at 837.

Matheny's reliance on *Williams* to argue that ambiguity over whether the National Lakeshore sponsored the events at the park creates a question of material fact is misplaced.  *See* 2002 WL 440221, at *6.  In *Williams*, the plaintiff was injured when she tripped while bird-watching on a walkway at a nature refuge.  The court denied summary judgment for the refuge, reasoning that a genuine issue of material fact remained regarding the plaintiff's status because third-party organizations ran many of the programs at the refuge but the refuge itself was responsible for maintaining the walkway.  *See Williams*, 2002 WL 440221, at *6.  A similar issue is not presented in this case.  Whereas the *Williams* plaintiff was using the walkway in a manner permitted by the refuge at the time of her injury, Matheny was injured while using National Lakeshore property in a manner actively advertised to be prohibited by the National Lakeshore.  Whichever organization sponsored events from time to time at the National Lakeshore is irrelevant to this case, as it is undisputed that Matheny was not participating in a sponsored event at the time of her injury.  And, as stated above, the mere tolerance of sledding does not create an implied or express invitation to sled.

Nevertheless, Matheny argues that the National Lakeshore acted maliciously because its agents knew of the existence of the pipe and that individuals sledded at Porter Beach, but failed to remove the pipe or warn sledders of its presence.

The IRUS "does not excuse the owner or occupant of premises from liability for injury to a person or property caused by a

10

malicious or an illegal act of the owner or occupant."  I.C. ß 14-22-10-2(g).  Malice, as referenced in the IRUS, "has been equated with an 'evil design,' and, malicious acts have been equated to acts which were wrongful and done without just cause or excuse, and/or acts 'done within a condition that shows a heart regardless of social duty and bent or mischief.'" *Reed*, 604 F.Supp. at 1261 (internal citations omitted).  *See also Fryback v. Indiana*, 400 N.E.2d 1128, 1131 (Ind. 1980) ("Malice is any evil design in general . . ."); *Blackburn v. Indiana*, 291 N.E.2d 686, 695 (Ind. 1973) ("Malice signifies a general malignant recklessness concerning the lives and safety of others.").  For example, the *Reed* court concluded that the presence of malice under the IRUS was an issue of material fact because the defendant landowner created a hazardous condition by allowing a previously constructed roadway to remain shallowly submerged beneath a later-built reservoir.  *See* 604 F.Supp. at 1262.  The reservoir was intended for recreational use, including boating, fishing, swimming, and water skiing.  *See Reed*, 604 F.Supp. at 1256.  In denying summary judgment against a plaintiff paralyzed by striking the road when diving off his boat, the *Reed* court noted that "the defendant had actual knowledge of the hazard yet did nothing, in spite of the probability of, and gravity of, harm and further failed to warn of the harm or attempt to ease such a harm."  *See Reed*, 604 F.Supp. at 1262.  Thus, the defendant's actions may have been malicious, rather than merely negligent,

11

which is exempted from suit by the IRUS.  See *Reed*, 604 F.Supp. at 1262.

In contrast to *Reed*, no reasonable juror could find that the National Lakeshore acted maliciously towards Matheny.  The plaintiff concedes that the National Lakeshore did not place the pipes at Porter Beach.  (Pl. Resp. MSJ, p. 7) Second, Matheny was not using Porter Beach as the National Lakeshore intended at the time of her injury, unlike the plaintiff in *Reed*.  Third, the National Lakeshore had advertised against sledding at the dunes due to severe injuries incurred by sledders striking hidden objects in the past.  Further, the undisputed evidence is that the National Lakeshore made efforts to remove the pipe previously struck by a sledder, but that a different pipe may have been removed.  Even if Matheny struck the same pipe, the court cannot find that the National Lakeshore's failure to remove the pipe amounts to more than negligence when a) the undisputed evidence shows that the pipe may not have been consistently visible due to the shifting nature of the dunes and b) sledding was prohibited in the area Matheny was injured precisely because of hidden objects.  Finally, the National Lakeshore's mere tolerance of sledding at Porter Beach, if true, is in stark contrast to the landowner's intent to open the reservoir to swimming and boating found in *Reed*.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, United States of America, on June 16, 2005 is **GRANTED**.

ENTERED this 17th day of January, 2006

           s/ ANDREW P. RODOVICH
            United States Magistrate Judge